UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

PATRICIA BOLIN and PAMELA MILLER,     Case No. 13-CV-0692 (PJS/SER)

                    Plaintiffs,

v.                                                    ORDER

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY,

                    Defendant.

---

William G. Peterson, PETERSON LAW OFFICE, LLC, for plaintiffs.

Eric C. Tostrud and David W. Asp, LOCKRIDGE GRINDAL NAUEN PLLP, for
defendant.

Timothy Davidson purchased accidental-death-and-dismemberment coverage under a

group insurance policy issued by defendant Hartford Life and Accident Insurance Company

("Hartford").  A few months later, Davidson died after he drank a great deal of alcohol while

taking prescription pain medication.  Plaintiffs Patricia Bolin (Davidson's mother) and Pamela

Miller (Davidson's sister) — the named beneficiaries under Davidson's policy — filed a claim

for accidental-death benefits with Hartford.  Hartford denied that claim.  Bolin and Miller then

filed this lawsuit, alleging that they are entitled to the benefits.

This matter is before the Court on the parties' cross-motions for summary judgment.

Hartford argues that Bolin and Miller are not entitled to benefits because Davidson's policy does

not cover losses "resulting from . . . medical . . . treatment of a sickness or disease."  Asp Aff.

Ex. 2(2) at 5 ("Policy") [ECF No. 37-3].  The Court agrees, and thus grants Hartford's motion[1]
and denies plaintiffs'.

## I. BACKGROUND

The facts of this case are essentially undisputed.  Davidson suffered from a number of
ailments, including back spasms, degenerative disc disease, post-laminectomy syndrome,
multiple-joint arthritis, and tremors.  *See* Kendall Decl. ¶ 2 [ECF No. 38].  These conditions
caused Davidson to experience pain, and Davidson was prescribed various drugs — specifically,
hydrocodone-acetaminophen, oxycodone, and benzodiazepine — to help alleviate that pain.  *Id*.
¶ 3.

On December 5, 2011, firefighters responded to a report of fire at Davidson's apartment.
*See* Asp Aff. Ex. 8 [ECF No. 37-4 at 26-29].  Davidson's burned body was discovered by the
firefighters.  *Id*.  An autopsy determined that Davidson did not die from the fire, but instead from
"mixed drug toxicity."  Asp Aff. Ex. 9 [ECF No. 37-5 at 2-6].  Davidson's blood-alcohol level at
the time of his death was .318, or about four times the legal definition of intoxication.  *Id*. at 2.
"This, in combination with the elevated hydrocodone [from Davidson's pain medication] in his
blood, caused him to stop breathing and resulted in his death."  *Id*.

Before his death, Davidson purchased $100,000 in accidental-death-and-dismemberment
insurance from Hartford.  *See* Asp Aff. Ex. 1 [ECF No. 37-1].  The policy under which Davidson
was covered was a group insurance policy sponsored by Financial Services Association.  *See*

---

[1]Hartford actually filed two motions for summary judgment.  *See* ECF Nos. 10 & 34.
Shortly after filing its first motion, the parties stipulated to an amendment to the pretrial
scheduling order, and Hartford withdrew its motion.  *See* ECF No. 16.  Pursuant to the new
pretrial scheduling order, Hartford filed its second motion for summary judgment a few weeks
later.  The Court grants this second motion for summary judgment.

Asp Aff. Ex 2(1) at 2 [ECF No. 37-2].  That policy insures against loss resulting from an

"Injury," and defines "Injury" as follows:

> Injury means bodily injury resulting directly from accident and
> independently of all other causes which occurs while the Covered
> Person is covered under the policy.  Loss resulting from:
> a) sickness or disease . . . or b) medical or surgical treatment of a
> sickness or disease; is not considered as resulting from injury."

Policy at 5.  The parties agree that the use of prescription medication is, as a general matter,

"medical . . . treatment of a sickness or disease."

Davidson named Bolin and Miller as his beneficiaries under the policy.  *See* Asp Aff.

Ex. 1.  Bolin filed a claim for accidental-death benefits shortly after Davidson's death.  *See* Asp

Aff. Ex. 12 [ECF No. 37-5 at 13-15].  Hartford denied that claim.  According to Hartford, the

evidence Bolin submitted in support of her claim did "not establish that Mr. Davidson's loss

meets the Policy's definition of Injury," and thus Hartford found that "Accidental Death benefits

are not payable under the terms of the Policy."  Asp Aff. Ex. 13 at 1 [ECF No. 37-5 at 17-19].

Bolin and Miller appealed this denial of benefits to Hartford's Claim Appeal Unit.  *See* Asp Aff.

Ex. 14 [ECF No. 37-5 at 21-22].  Again, Hartford determined that Davidson's loss was not

covered by the policy and denied the claim.[2]  *See* Asp Aff. Ex. 15 [ECF No. 37-5 at 24-26].

---

[2]Hartford's Claim Appeal Unit based its denial of plaintiffs' appeal on the policy's
exclusion for "Injur[ies] sustained while voluntarily taking drugs which federal law prohibits
dispensing without a prescription . . . unless the drug is taken as prescribed or administered by a
licensed physician . . . ."  *See* Asp Aff. Ex. 15 at 3 [ECF No. 37-5 at 24-26]; Policy at 11.  In this
litigation, Hartford argues that Davidson did not suffer an "Injury" and that, even if he did suffer
an "Injury," the prescription-medication exclusion relied on by the Claim Appeal Unit applies
(because Davidson did not take his prescription pain medication "as prescribed . . . by a licensed
physician" when he drank alcohol while taking that medication, contrary to the instructions of
his health-care providers).  Because the Court concludes that Davidson did not suffer an "Injury"
for purposes of the policy, the Court need not decide whether the prescription-medication
exclusion applies.

Bolin and Miller then filed this lawsuit in Minnesota state court, seeking review of Hartford's denial of their claim. *See* ECF No. 1-1. Hartford removed to federal court on the basis of diversity jurisdiction. *See* ECF No. 1; 28 U.S.C. § 1332. Each party now moves for summary judgment.

## II.  ANALYSIS

### A.  *Standard of Review*

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute over a fact is "material" only if its resolution might affect the outcome of the lawsuit under the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Id.* at 255.

### B.  *Choice of Law*

The parties dispute which state's law applies to this litigation. Bolin and Miller contend that Minnesota law applies, as Davidson was a resident of Minnesota, purchased coverage in Minnesota, and died in Minnesota. Hartford contends that Tennessee law applies, as the master policy was a group policy issued and delivered to Financial Services Association in Franklin, Tennessee. *See* Asp Aff. Ex. 2(1).

In a diversity case, a federal court applies the choice-of-law principles of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Highwoods Props., Inc. v. Exec. Risk Indem., Inc.*, 407 F.3d 917, 920 (8th Cir. 2005). "Applying Minnesota's choice of law rules, it is unnecessary to make a choice of law unless one state's law would be 'outcome

-4-

determinative' by reason of an actual conflict." *W.S.A., Inc. v. Liberty Mut. Ins. Co.*, 7 F.3d 788, 791 n.2 (8th Cir. 1993) (quoting *Hague v. Allstate Ins. Co.*, 289 N.W.2d 43, 47 (Minn. 1978)). The parties have not identified an actual conflict between Minnesota law and Tennessee law relevant to this case, and the Court has not found any such conflict.[3] Therefore, the Court does not need to decide which state's law applies. But because plaintiffs argue that Minnesota law applies, and because Hartford concedes that Minnesota law does not conflict with Tennessee law (*see* ECF No. 36 at 14), the Court will apply Minnesota law.

## C.  Coverage

As explained above, the policy covers loss that results from "Injury." The policy provides, however, that "[l]oss resulting from:  a) sickness or disease . . . or b) medical . . . treatment of a sickness or disease; is not considered as resulting from injury." Policy at 5.

Hartford contends that Davidson's death "result[ed] from . . . medical . . . treatment of a sickness or disease," *id.*, as Davidson's use of prescribed pain medication substantially contributed to the mixed drug toxicity that caused his death. Thus, says Hartford, Davidson's death did not result from an "Injury" as that term is defined by the policy, and Bolin and Miller are not entitled to benefits. Conversely, Bolin and Miller contend that Davidson's death "result[ed] from" drinking alcohol, as Davidson would not have died if he had not consumed alcohol. And because drinking alcohol was not related in any way to Davidson's medical

---

[3]Bolin and Miller contend that Minnesota law differs from Tennessee law through the operation of Minn. Stat. §§ 62A.04 and 62A.05, which impose certain restrictions on insurance policies delivered or issued in Minnesota, and which are the subject of numerous pages in plaintiffs' briefs. The policy at issue in this case, however, was delivered and issued to Financial Services Association in Franklin, Tennessee. *See* Asp Aff. Ex. 2(1). Moreover, under Minn. Stat. § 62A.09, "[n]othing in [§§ 62A.04 or 62A.05] shall apply to or affect . . . any group policy of insurance . . . ." Plaintiffs conceded at the hearing on the parties' motions for summary judgment that the policy at issue in this case is a group policy. For these reasons, §§ 62A.04 and 62A.05 are entirely irrelevant to this dispute.

treatment, Bolin and Miller argue that Davidson's death did indeed result from an "Injury" under the policy.

Both parties are correct, in the sense that Davidson's death resulted *both* from prescription-drug use *and* from alcohol consumption. There is no evidence in the record to suggest that Davidson would have died only from taking his pain medication. Likewise, there is no evidence in the record to suggest that Davidson would have died only from his consumption of alcohol. What killed him was his taking pain medication while consuming alcohol — or, put differently, his consumption of alcohol while taking pain medication.

Bolin and Miller interpret the phrase "resulting from . . . medical . . . treatment" to mean "resulting *solely* from medical treatment." In their view, if anything other than medical treatment contributes to a death, then that death did not "result[] from . . . medical . . . treatment." But this is an unreasonably narrow reading of "resulting from" — a reading that is at odds with countless Minnesota cases that interpret the phrase "resulting from" (or very similar phrases) in an insurance policy to require "'only a causal connection . . . .'" *Eng'g & Constr. Innovations, Inc. v. W. Nat. Mut. Ins. Co.*, No. A12-1785, 2013 WL 2460400, at *6 (Minn. Ct. App. June 10, 2013) (quoting *Ross v. City of Minneapolis*, 408 N.W.2d 910, 912 (Minn. Ct. App. 1987)).

Without question, there was "a causal connection" between Davidson's medical treatment and his death; "but for" Davidson's use of prescription medication, he would not have died. *See* Asp Aff. Ex. 9. Indeed, Bolin and Miller acknowledge that prescription-drug use played a substantial role in Davidson's death. *See* ECF No. 42 at 28 ("In this case, the cause of the death of Timothy Davidson was his attempt to obtain some relief from pain by consuming his prescribed medications with alcohol."). Because there was a causal connection between Davidson's medical treatment and his death, Davidson's death "result[ed] from" medical

treatment, and therefore did not result from an "Injury" as defined by the policy.  *Cf. SECURA Supreme Ins. Co. v. M.S.M.*, 755 N.W.2d 320, 327-28 (Minn. Ct. App. 2008) (finding insurance policy's exclusion of coverage for loss "result[ing] from" the criminal conduct of the insured applied when both a criminal act and non-criminal negligence contributed to the loss).[4]

Indeed, the connection between Davidson's death and his medical treatment is much closer than "but for" causation.  The phrase "resulting from" in an insurance policy does not *require* proximate causation.  *See Eng'g & Constr. Innovations, Inc.*, 2013 WL 2460400, at *6. But if a death *is* proximately caused by an event, the death indisputably "results from" that event. Davidson's use of prescription medication to treat his pain was clearly a proximate — that is, a substantial, direct, and immediate — cause of his death.  *See Peterson v. Fulton*, 256 N.W. 901, 903 (Minn. 1934) (defining "proximate cause of a given result" in the negligence context as "a material element or a substantial factor in the happening of that result.").

In sum, because Davidson's death resulted from medical treatment, his death did not result from an "Injury" as that term is defined by the policy, and Bolin and Miller are not entitled to benefits.  Accordingly, plaintiffs' motion for summary judgment is denied, and Hartford's motion for summary judgment is granted.

---

[4]Although the issue was not raised by the parties, the Court notes that, under Minnesota law, an injury may be covered under an insurance policy when two independent events — one excluded, the other not excluded — combine to cause the injury.  *See N. Star. Mut. Ins. Co. v. Doree*, No. A08-0152, 2008 WL 5215969, at *2-4 (Minn. Ct. App. Dec. 16, 2008) (examining cases).  But this "divisible, concurrent-cause doctrine" applies only when the non-excluded event "*could* have operated independent[ly]" of the excluded event to cause the injury.  *State Farm Ins. Cos. v. Seefeld*, 481 N.W.2d 62, 65 (Minn. 1992).  Here, there is no evidence that the non-excluded cause of Davidson's death — his alcohol use — could have caused Davidson's death in the absence of his use of prescribed medication.  Without such evidence, the divisible, concurrent-cause doctrine cannot apply to this case.  *Cf. Eng'g & Constr. Innovations, Inc. v. L.H. Bolduc Co., Inc.*, 825 N.W.2d 695, 705 (Minn. 2013) ("It is well-established that the burden of proof rests upon the party claiming coverage under an insurance policy." (quotation omitted)).

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS

HEREBY ORDERED THAT:

1.      The first motion for summary judgment of defendant Hartford Life and Accident

Insurance Company [ECF No. 10] is WITHDRAWN.

2.      The second motion for summary judgment of defendant Hartford Life and

Accident Insurance Company [ECF No. 34] is GRANTED.

3.      The motion for summary judgment of plaintiffs Patricia Bolin and Pamela Miller

[ECF No. 40] is DENIED.

4.      The complaint [ECF No. 1-1] is DISMISSED WITH PREJUDICE AND ON THE

MERITS.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  June 30, 2014                                s/Patrick J. Schiltz
                                                    Patrick J. Schiltz
                                                    United States District Judge

-8-